**United States District Court**
For the Northern District of California

1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7
8           FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
FAROOQ A. ALEEM,
11
        Petitioner,                        No. C 08-02780 WHA
12
    v.
13
DERRAL G. ADAMS,                           **ORDER DENYING PETITION
                                           FOR WRIT OF HABEAS CORPUS**
14
        Respondent.
15  _____/
16
                        **INTRODUCTION**
17
        Petitioner Farooq Aleem is serving a sentence of sixteen years followed by a consecutive
18
sentence of 65 years to life.  Petitioner filed this habeas corpus petition pursuant to 28 U.S.C.
19
2254.  Petitioner claims his trial counsel improperly failed to object to inadmissible hearsay in
20
violation of his Sixth Amendment right to effective assistance of counsel.  He also claims there
21
was insufficient evidence to support the one-strike sentencing alternative that was imposed for a
22
kidnapping that increased the risk of harm.  For the reasons stated below, petitioner's claims are
23
rejected.  His petition is **DENIED**.
24
                        **STATEMENT**
25
        In November 2004, petitioner was found guilty of crimes arising out of two separate
26
incidents involving two victims.  With regard to Jane Doe 1, petitioner was convicted of false
27
imprisonment, contributing to the delinquency of a minor, forcible oral copulation, kidnap to
28
commit forcible oral copulation, forcible oral copulation having kidnapped the victim, witness

**United States District Court**
For the Northern District of California

1  dissuasion, criminal threats, forcible penetration by a foreign object, misdemeanor batter, and

2  sexual battery.  With regard to Jane Doe 2, petitioner was convicted of two counts of forcible

3  oral copulation having kidnapped the victim and moved her so as to substantially increase the

4  risk of harm.

5        This undisputed fact statement is taken from the California Court of Appeal's denial of

6  petition for writ.  The following are presumed to be true pursuant to 28 U.S.C. 2254(e):

7        ***Jane Doe 2***

8        The charges involving Jane Doe 2 arose out of events taking place
     on December 19, 2002.  Jane Doe 2 testified that she left her
9        boyfriend's house at approximately 1:00 that morning.  She took a
     bus, getting off at a transfer point.  Defendant came by and offered
10       her a ride.  Jane Doe 2 got into the car.  Another man was also in
     the car.  Instead of taking Jane Doe 2 home, defendant drove over
11       the Bay Bridge and then to Fairfield, asserting that they were going
     to a party.  They went to a Fairfield residence, where two other
12       people were present, playing video games.  Defendant told her to
     sit down.  A few minutes later defendant told her to follow him.
13       Jane Doe 2 replied that she thought it would be better for her to
     stay where she was.  Defendant, in a "stern voice" again told her to
14       follow him.  Jane Doe 2 followed him into a bathroom, where he
     told her to take off her clothing.  She stated she did not want to do
15       it, and he again demanded, in a louder voice, that she take her
     clothing off.  Defendant then removed Doe 2's jacket, shirt and
16       bra, and pulled down her pants and underpants.  He made her sit on
     the toilet and demanded that she orally copulate him and
17       physically forced her to do so, telling her, "Don't think that I won't
     hit you."  She pulled away, but defendant made her resume the oral
18       copulation.  The victim stated that she was too frightened to
     scream.

19

20       At some point, someone else knocked on the door of the bathroom.
     Defendant left, telling Jane Doe 2 to wait.  Jane Doe 2 put her
21       clothing back on.  The other man from the car came in, holding a
     condom, asking "if he could . . ." Jane Doe 2 refused, and asked
22       him to take her home.  He replied that he would have to check with
     his brother.  They left the bathroom, going to another room where
23       defendant joined them, motioning that they should leave and
     telling the victim, "Let's go."  Jane Doe 2 hesitated, causing
24       defendant to tell her again to leave, using a sterner tone of voice.
     Defendant and Jane Doe 2 got into the car.  By this time, defendant
25       had taken her wallet and cell phone.  They drove back to San
     Francisco.  During the drive, defendant tried to force her to orally
26       copulate him.  She resisted, and he stopped.  During the drive,
     defendant also used what the victim believed was crystal
27       methamphetamine.  Defendant stopped at a toll booth.  The victim
     did not attempt to jump out, explaining later that she had been too
28       scared to realize anything at that moment.

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant drove to a parking lot on Twin Peaks in San Francisco. He removed the victim's clothing and again directed her to orally copulate him. When she refused, he reached back behind his seat, telling her, "Don't think I won't pull out my gun and shoot you." Jane Doe 2 testified that she was in fear for her life, and hoped that if she complied with defendant's demands he would take her home. She stopped after a minute, but defendant demanded that she continue, pushing her head onto his penis. Another car arrived. Defendant left, driving to a residential neighborhood in Bernal Heights, allowing the victim to dress during the drive. The victim asked him to take her home, but he refused and again forced her to orally copulate him until he ejaculated. The victim also testified that defendant also digitally penetrated her at each San Francisco location. Defendant then drove Jane Doe 2 to a location near her home. He gave her back her wallet and cell phone, after obtaining her telephone number. She thought that he would let her leave if she gave him her number. Defendant let Jane Doe 2 get out of the car and she walked home. She did not report the events to the police for approximately one month, when she did so at the urging of friends.

***Jane Doe 1***

The charges involving Jane Doe 1 arose out of events taking place on January 14, 2003. According to the victim, defendant approached her while she was waiting at a bus stop in San Francisco, sometime after midnight. Defendant invited her to smoke some marijuana with him and another man who was in his car. Jane Doe 1 got into the car. They drove around, smoking marijuana and sniffing cocaine. Defendant told her he would drive her home, but instead drove to a motel in Daly City. Jane Doe 1 stated that she had difficulty remembering everything. She didn't want to remember and had blocked the events out of her mind. In addition, the drugs made her feel drowsy and nauseous and delirious. She didn't believe she could get away from the men and went with them to the motel room. Defendant kissed her. He pushed her down and felt her body over her clothing. Defendant told her to take a shower. He came in while she was showering and pressed his penis against her vagina. The victim testified she couldn't remember what else happened while they were in the bathroom. When she was interviewed by the police later that day, however, she stated that defendant forced her to copulate him orally after the shower. She testified that although she had blocked out the events of the night, she knew she had answered the detective's questions truthfully.

At some point Jane Doe 1 was able to get dressed. She tried to leave the motel room, but defendant stepped in front of the door, saying, "You don't want to do that." He told her, "If you walk out the door, I'm going to fuck you up." Jane Doe 1 sat back down in a chair. She tried to leave, but defendant grabbed her arm. She testified that they all stayed calm for a while and then they headed back out. She could not remember if defendant said anything to her, but when she asked him to take her home, he told her, "You haven't finished your job yet. You need to finish what you started." They got back into the car. Defendant drove to

3

**United States District Court**
For the Northern District of California

1

2

3

Diamond Heights.  His companion tried to touch Jane Doe 1
during the drive, but she would not allow it and he slapped her in
the face, telling her "You shouldn't be acting like this because
something bad is going to happen to you."

4

5

6

7

8

9

10

At Diamond Heights, defendant threatened Jane Doe 1 that if she
kept resisting they would have to beat her.  He ordered her to get
into the passenger seat.  The passenger and Jane Doe 1 changed
seats.  Defendant ordered her to orally copulate him.  The victim
testified that when she refused, he told her, "You better."  She
stopped trying to fight.  He forced her head down onto his penis,
slapping her at some point.  She told police that defendant pulled
her head down onto his penis, grabbing her hair.  She tried to pinch
him and he hit her on the head to make her stop.  She tried to get
away but he forced her back.  Defendant put his finger into her
vagina.  Defendant ejaculated into the victim's mouth.  He then
drove her to a gas station and dropped her off, telling her that if
she told anyone he would kill her.  Defendant also wrote a
telephone number on a piece of paper, which he gave to the victim.

11

12

13

14

15

16

17

18

19

Jane Doe 1 walked home, where she told her mother what had
happened.  Her mother called the police.  Jane Doe 1 was
examined by a nurse practitioner, who testified that Jane Doe 1
told her that defendant had offered her a ride, drove her to Twin
Peaks, then to a hotel.  He then drove her to Diamond Heights,
where he grabbed her hair and forced her down on his penis again,
ejaculating into her mouth.  He put his finger into her vagina and
touched his penis to her vagina.  A second man, who she said was
named "Dog," fondled her over her clothes and slapped her twice
in the face.  Jane Doe 1 told the nurse that she had not engaged in
any voluntary drug use within the 96 hours preceding the assault,
but had sniffed white powder involuntarily.  The nurse found
evidence of blunt trauma from something hitting the back of the
victim's throat.  There was evidence of some minor injury to the
victim's vagina.

20

21

22

23

The police contacted the manager of the motel, asking that he call
the police if defendant returned.  On January 17, 2003, defendant
went back to the motel and the manager called the police.  They
found defendant and a woman in the room.  Defendant had a
baggie of marijuana and a cigarette containing cocaine on his
person.  The police found another baggie of marijuana in
defendant's car.

24

25

26

27

28

     In March 2005, after being found guilty of fourteen counts, petitioner was sentenced to

an aggregate determinate term of sixteen years followed by an indeterminate term of 65 years to

life.  Petitioner appealed and filed in the court of appeal an original petition for writ of habeas

corpus.  The court of appeal affirmed the judgment and denied the petition for writ in November

2006.  The California Supreme Court denied both petitions for review in March 2007, thereby

exhausting petitioner's state court remedies.  He filed this petition in federal court in June 2008.

**United States District Court**
For the Northern District of California

**ANALYSIS**

**1.    STANDARD OF REVIEW.**

The Antiterrorism and Effective Death Penalty Act governs district court review of

petitions for writs of habeas corpus.  Persons in custody pursuant to a state-court judgment may

be provided habeas relief by a federal court if they are held in violation of the Constitution, laws,

or treaties of the United States.  A petitioner must establish that for any claim adjudicated on

the merits the state-court decision either (1) was contrary to clearly established federal law as

determined by the United States Supreme Court;  (2) involved an unreasonable application

of clearly established federal law as determined by the Supreme Court;  or (3) was based on

an unreasonable determination of the facts in light of the evidence presented in state court.

28 U.S.C. 2254.

The phrase "clearly established" in AEDPA refers to the holdings, as opposed to the

dicta, of decisions of the Supreme Court as of the time of the relevant state court decision;

in other words, "clearly established Federal law" is the governing legal principle or principles

set forth by the Supreme Court at the time the state court renders its decision. *LOCKYER v.*

*Andrade*, 538 U.S. 63, 71 (2003).

A state court's decision is "contrary to" federal law if it fails to apply the correct

Supreme Court authority to a question of law or if it applies such authority incorrectly to a case

involving facts "materially indistinguishable" from those in the controlling decision.  A state

court's decision involves an "unreasonable application" of federal law if it applies the governing

Supreme Court rule in a way that is objectively unreasonable. *Williams v. Taylor*, 529 U.S. 362,

405, 409–10 (2000).  The Ninth Circuit has held that in AEDPA cases, determinations of factual

issues by a state court must be presumed correct unless they are the result of an "unreasonable

determination." *Taylor v. Maddox*, 366 F.3d 992, 999–1000 (9th Cir. 2004).  This presumption

can only be rebutted by clear and convincing evidence.  28 U.S.C. 2254(e)(1).

**2.    PETITIONER'S SIXTH AMENDMENT CLAIM.**

Petitioner argues that his Sixth Amendment rights were violated due to ineffective

assistance of trial counsel.  Petitioner's defense counsel allegedly failed to object to inadmissible

5

United States District Court

For the Northern District of California

1    hearsay evidence relating to the circumstances surrounding his crimes against Jane Doe 1.

2    The hearsay was allegedly "the only incriminating evidence" on those counts.  Petitioner

3    contends that defense counsel's failure to object also indicated that defense counsel was

4    insufficiently familiar with the rules of evidence, and requests an evidentiary hearing to

5    determine the adequacy of counsel.  Petitioner's arguments are rejected.

6           Claims alleging ineffective assistance of counsel are evaluated under the two-part test

7    set forth in *Stickland v. Washington*, 466 U.S. 668 (1984).  A petitioner must demonstrate that:

8    (1) counsel's actions were outside the wide range of professionally competent assistance, and

9    (2) the petitioner was prejudiced by reason of counsel's actions.  To prevail on such a claim,

10   a petitioner must overcome the strong presumption that counsel's conduct falls within a wide

11   range of reasonable professional assistance.  *Id.* at 668, 686–90.  Petitioner bears the burden

12   of overcoming the presumption that counsel's actions were in accordance with sound trial

13   strategies.  Furthermore, if it is easier to dispose of an ineffectiveness claim on the ground of

14   lack of sufficient prejudice, it is unnecessary to analyze whether counsel's action was

15   reasonable.  *Id*. at 698.

16          Petitioner contends that defense counsel improperly failed to object to hearsay evidence

17   in the testimony of nurse practitioner Kris Bleything and in the transcript of a taped interview

18   between Jane Doe 1 and Detective Mangan.  Petitioner alleges that the primary evidence for the

19   forcible oral copulation (count four), forcible penetration by a foreign object (count ten),

20   criminal threats (count thirteen), and sexual battery (count fourteen) was in these out-of-court

21   statements.  Allegedly, the failure to object to that hearsay redounded no benefit to the defense.

22          The record does not support petitioner's contentions.  Petitioner fails to cite to a single

23   Supreme Court decision holding that trial counsel must object to potentially inadmissible

24   evidence.  In fact, strategic decisions by defense counsel are "virtually unchallengeable."

25   *Strickland*, 466 U.S. at 689–90.  The choice of what particular defense to present is a matter

26   usually within the discretion of the attorney, even if it is unwise.  *See, e.g.*, *Rodriquez-Gonzalez

27   v. INS*, 640 F.2d 1139, 1142 (9th Cir. 1981).  Here, the out-of-court statements that petitioner

28   challenges were used to advance the defense.  They were permitted into evidence at the

6

**United States District Court**
For the Northern District of California

1    discretion of defense counsel in order to attack Jane Doe 1's credibility.  As indicated by the

2    state court of appeal, defense counsel stipulated to the introduction of those statements,

3    indicating an affirmative plan to have the jury hear it.  Counsel then used the statements to

4    support the argument that Jane Doe 1 consented to petitioner's actions.  The statements indicated

5    that Jane Doe 1 had smoked marijuana with petitioner.  Defense counsel argued that Jane Doe 1

6    was not afraid, but instead went with petitioner in order to obtain more drugs, suggesting any

7    later recollection of force or fear was manufactured and not real.  In support of that argument,

8    defense counsel contrasted Jane Doe 1's court testimony with her statement to the police.

9    "So what did she say in court?  In court she testified that she was scared when they got to the

10   motel room, and she didn't know what to do.  What did she tell the detective?  'I was okay.

11   He didn't threaten me.  I walked in there.  It wasn't a problem'" (Adams Exh. 7 at 11).

12   Defense counsel asserted that Jane Doe 1 did not seem to be upset on the taped interview.

13   He suggested that the detective persuaded her to say that she had been forced into the sexual

14   acts.  Accordingly, defense counsel used the out-of-court statements to the advantage of his case.

15   His failure to object was therefore a tactical decision within his discretion.

16          Petitioner has not established that defense counsel's tactical decisions at trial were

17   objectively unreasonable.  Furthermore, under *Strickland*, a showing of deficient trial counsel

18   performance is not sufficient to establish a successful habeas claim.  A petitioner also must

19   establish that prejudice resulted from the deficient performance.  *See, e.g., Bloom v. Calderon*,

20   132 F.3d 1267, 1270–71 (9th Cir. 1997).  In other words, a petitioner must demonstrate "a

21   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

22   would have been different.  A reasonable probability is a probability sufficient to undermine

23   confidence in the outcome." *Strickland*, 466 U.S. at 694.  Here, Jane Doe 1 testified that the

24   crimes occurred.  This alone would be sufficient evidence.  The out-of-court statements added

25   little detail about the crimes.  Petitioner has not demonstrated a reasonable probability that the

26   result would have been different had defense counsel objected to the out-of-court statements.

27

28

**United States District Court**
For the Northern District of California

1    Accordingly, petitioner's Sixth Amendment claim is denied.  Moreover, there is nothing

2  in the record to suggest that defense counsel did not understand the rules of evidence.

3  Petitioner's request for an evidentiary hearing is denied.

4         **3.    PETITIONER'S DUE PROCESS CLAIMS.**

5    Petitioner asserts that there was insufficient evidence to support the finding that Jane Doe

6  1's aggravated kidnapping increased her risk of harm for the crime of kidnapping to commit oral

7  copulation (count seven).  This argument is rejected.

8    Under *Jackson v. Virginia*, the relevant question is "whether, after viewing the evidence

9  in the light most favorable to the prosecution, any rational trier of fact could have found the

10  essential elements of the crime beyond a reasonable doubt."  443 U.S. 307, 318–19 (1979).

11  Furthermore, since the enactment of AEDPA, federal decisions "apply the standards of *Jackson*

12  with an additional layer of deference."  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

13  A habeas petition can succeed only when "the state court's application of the *Jackson* standard"

14  is "objectively unreasonable."  *Id.* at 1275 n.13.

15    The one-strike law provides an alternative sentencing scheme for sex offences committed

16  under certain conditions.  Cal. Penal Code § 667.61.  It applies when a defendant "kidnap[s] the

17  victim of the present offense and the movement of the victim substantially increased the risk of

18  harm to the victim over and above that level of risk necessarily inherent in the underlying

19  offense."  *People v. Diaz*, 78 Cal. App. 4th 243, 246 (2000).  Under that circumstance, the

20  sentence is 25 years to life.  When the victim is kidnapped but the movement does not increase

21  the risk of harm, the sentence is fifteen years to life.  Cal. Penal Code § 667.61.

22    Factors relevant to the increase-in-the-risk-of-harm element for this form of aggravated

23  kidnapping include the "decreased likelihood of detection, the danger inherent in a victim's

24  foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional

25  crimes.  *People v. Rayford*, 9 Cal. 4th 1, 13–14 (1994).  These factors are directly on-point here.

26    The state court of appeal identified substantial evidence to support the jury's finding that

27  moving the victim increased the risk of harm.  It recognized that "simply moving the victim

28  from one place to another by automobile exposed her to the possibility of an accident or to

United States District Court

For the Northern District of California

1  injury, including injury resulting from an attempt to escape from the car" (Adams Exh. 7 at 17).

2  Also, there was at least one other person at the motel — the clerk — who could have helped

3  Jane Doe 1.  But there was nobody at Diamond Heights according to her.  Finally, petitioner

4  allowed Jane Doe 1 to get dressed at the hotel, which is "inconsistent with the idea that he

5  intended to assault her again at that location" (*ibid.*).  Petitioner had a history of taking his

6  victims to deserted public places for the specific reason of sexually assaulting them.

7  That petitioner took Jane Doe 1 to Diamond Heights suggests that he intended to assault

8  her again.

9        Accordingly, the state court of appeal reasonably concluded that the evidentiary

10  requirement was met for this crime.

11                    *              *              *

12        Petitioner also argues that there was insufficient evidence to support the finding that

13  moving Jane Doe 2 increased her risk of harm for the purposes of the one-strike alternative

14  sentencing scheme.  This argument is rejected.

15        The factors relevant to the increase-in-the-risk-of-harm inquiry are stated above.

16  Here, the court of appeal found that petitioner "took the victim from a house into a car, which

17  he then drove while apparently using crystal methamphetamine.  During the drive, he tried to

18  force the victim to orally copulate him.  [Petitioner], accordingly, exposed the victim to a

19  significant risk of injury from an automobile accident" (Adams Exh. 7 at 16).  Additionally,

20  petitioner transported Jane Doe 2 from Twin peaks to Bernal Heights because someone else

21  had shown up at Twin Peaks.  The stranger at Twin Peaks could have been a potential source

22  of help to Jane Doe 2, so petitioner drove her to another secluded area to continue to perform

23  his sexual acts.  Accordingly, a rational trier of fact could have easily concluded that moving

24  Jane Doe 2 substantially increased her risk of harm.

25                    *              *              *

26        Petitioner claims there was insufficient evidence to support the jury's finding that

27  petitioner used force to kidnap Jane Doe 2 with regard to counts seventeen and eighteen.

28  This argument is also rejected.

9

United States District Court

For the Northern District of California

1    Under California law, kidnapping for the purposes of the one-strike alternative

2    sentencing scheme is defined as follows:

3    Every person who unlawfully and with physical force or by any
     other means of instilling fear, steals or takes, or holds, detains or
4    arrests another person and carries that person [for a distance that is
     substantial in character], is guilty of the crime of kidnapping.

5    Cal. Penal Code § 667.61(e)(1); Cal. Penal Code § 207(a).  To prove this crime, the victim must

6    be moved "by the use of physical force or any other means of instilling fear." *Ibid.*

7    Petitioner's argument is unique.  He does not dispute that there was substantial evidence

8    to support a finding that Jane Doe 2 was moved by a means of instilling fear.  Instead, petitioner

9    contends that there was insufficient evidence to support a finding that Jane Doe 2 was moved by

10   physical force.  He argues that although the crime of kidnapping can be committed by the use of

11   physical force or the instilling of fear, "the jurors in the instant case were instructed only on

12   kidnapping by the use of force."  This is patently untrue.  The jurors were first given the

13   instructions for "aggravated kidnapping" for the crime of kidnapping to commit oral copulation

14   (count six).  It was defined as "the unlawful movement by physical force of a person without

15   that person's consent."  Then, they were given the instructions for a lesser crime of kidnapping

16   to commit oral copulation (alternative sentence for count six).  Then, the jurors were given the

17   following instruction:

18   Kidnapping within the meaning of the special allegations pursuant
19   to Penal Code section 667.61(e)(1) with counts 7, 16, 17, and 18, is
     as follows:

20   Every person who unlawfully and with physical force or by any
21   other means of instilling fear, steals or takes, or hold detains, or
     arrests another person and carries that person without her
22   consent . . . to move for a distance that is substantial in character,
     is guilty of the crime of kidnapping in violation of Penal Code
23   section 207(a).

24   (RT 1068–70).  Finally, the jurors were given instructions for the one-strike alternative

25   sentencing scheme for "aggravated kidnapping."  They were told that to find aggravated

26   kidnapping, they must find "that the defendant, Farooz Aleem, kidnapped Jane Doe 2, and the

27   movement of Jane Doe 2 substantially increased the risk of harm to her over and above that level

28   of risk necessarily inherent in counts 16, 17, and 18 within the meaning of Penal Code section

10

United States District Court

For the Northern District of California

667.61(d)(1)." But the jurors were not given the precise definition of kidnapping in conjunction with the alternative sentencing scheme. Petitioner argues that the jurors might have been led to believe that aggravated kidnapping for the alternative sentencing scheme of counts sixteen, seventeen, and eighteen required the use of physical force.

The court of appeal was reasonable in its finding here. It held:

> As the jury was instructed, subdivision (d)(2) adds the element that the movement of the victim substantially increased the risk of harm to the victim over and above the level of risk necessarily inherent in the underlying offense. In addition, the prosecutor, in closing argument, explained to the jury that the elements of kidnapping, including movement of the victim by the use of force or by any other means of instilling fear, applied to the special allegations of counts 17 and 18. In sum, we conclude that there is no reasonable possibility that the jury misunderstood the requirements of section 667.61.

(Adams Exh. 7 at 14–15). The court of appeal appropriately concluded that the jury was correctly instructed on kidnapping for the purposes of the alternative sentencing scheme in counts seventeen and eighteen, which included the alternative means of instilling fear. As stated, petitioner does not dispute that there was sufficient evidence to find kidnapping by means of instilling fear. Kidnapping by means of instilling fear satisfies the definition in California Penal Code Section 667.61(d)(1).

**CONCLUSION**

Petitioner has not alleged facts which indicate that his Sixth Amendment rights were violated due to ineffective assistance of trial counsel. Accordingly, petitioner's Sixth Amendment claim is **DENIED**. Since there is nothing in the record to suggest that defense counsel did not understand the rules of evidence, petitioner's request for an evidentiary hearing is **DENIED**.

11

1    There was sufficient evidence for the jury to find the increase-in-the-risk-of-harm and the

2  use-of-force elements for the alternative sentencing scheme in counts seven, seventeen, and

3  eighteen.  Accordingly, petitioner's due process claims are **DENIED**.

4

5    **IT IS SO ORDERED.**

6

7  Dated:  August 5, 2009.

WILLIAM ALSUP
8                                                       UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12